IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTINE DUGGAN,

    Plaintiff,

  v.

MICHAEL ASTRUE, Commissioner of Social Security,

    Defendant.
                                         /

No. C 11-02176 WHA

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security action, plaintiff appeals the denial of disability benefits. For reasons stated below, plaintiff's motion for summary judgment is **GRANTED IN PART**, and defendant's motion for summary judgment is **DENIED**. Plaintiff's request for payment of benefits without rehearing is **DENIED**.

## STATEMENT

**1.   FACTUAL BACKGROUND.**

Plaintiff Christine Duggan is a 48-year-old woman with a high school education. She stopped working in May 2003 because of alleged disability (AR 38). Since that time, she has been examined by many healthcare providers for depression, carpal tunnel syndrome, and back pain.

The earliest medical reports in the record are dated soon after Duggan's alleged date of disability. In May 2003, Dr. Michael Novak, examined Duggan, took x-rays, and diagnosed her with lumbar sprain/strain from "minimal degenerative joint disease and facet arthritis (low back

arthritis)." Dr. Novak's report expected resolution of Duggan's lumbar sprain in four to six weeks with physical therapy and medication (AR 164–66). Despite physical therapy, however, Duggan's back problems did not improve (*see* AR 169–172). Two years later, in January 2005, Dr. Kimberly Fordham examined Duggan and found lower back pain and numbness in her arm (AR 264). After initially reporting that Duggan was "able to work," Dr. Forham later opined that Duggan was not able to work due to chronic back pain, anxiety, and depression (AR 263, 328). Between January and April 2005, Duggan had multiple clinic visits for back pain despite taking pain medications (AR 175–91).

In October 2006, Duggan's chiropractor, Dr. David Miner, opined that she had limited ability to manipulate her hands and could not lift or carry more than ten pounds, and could stand only for two hours a day due to disc lesions, spasms, and weakness in her lower spine (AR 336–39). In November 2006, Duggan's orthopedist, Dr. Marko Bodor, confirmed that Duggan had hand numbness, pain, and weakness due to carpal tunnel syndrome (AR 552–55). In July 2007, Dr. Mary Bogle, Duggan's psychiatrist, found that Duggan's had cognitive impairment, to the point of major impact on her ability to make judgments and are out instructions, because of her chronic pain and affective state (AR 378–79, 536–37). Between November 2006 and May 2008, Nurse Practitioner Gail Marguette examined Duggan approximately ten times. Similar to other healthcare providers, Nurse Marguette opined that Duggan had chronic neck and back pain, herniated disk unresponsive to treatment, pelvic pain, carpal tunnel syndrome, anxiety, depression, and smoking addiction (AR 563–82, 365–71).

Notably, consulting physicians also examined Duggan for the express purpose of determining whether disability benefits were warranted. These consulting physicians were from Disability Determination Service (a State agency) and in August 2007 found that Duggan had pain and numbness in her back and legs, herniated discs, very limited mobility, absence of reflexes and weakness in lower extremities, and obesity (AR 546–49). Dr. Avinash Ranchandani, an orthopedist, opined that she could only stand for less than two hours a day, sit for less than six hours a day, had to use a walker or cane, could only lift and carry less than ten pounds, and had very limited range of motion (AR 542–45).

2

### 2.   PROCEDURAL HISTORY.

Plaintiff Christine Duggan initially filed for disability benefits in March 2005 alleging disability that began two years prior in May 2003 (AR 38). On February 26, 2007, after a hearing, Administrative Law Judge Charles Reite found that Duggan was not disabled despite having impairments of lumbar degenerative disc disease, polysubstance abuse in reported remission, and right upper extremity strain (AR 37–38). After the appeals council denied her request for review, Duggan filed an action for review in this Court in August 2007 (AR 20, 484–87).

While the appeal on her first application was pending, Duggan had filed a separate application for disability with Disability Determination Services, which are State agencies that make disability determinations for the Social Security Administration, in March 2007 (AR 588). The DDS physicians conducted their own clinical examinations and evaluated prior medical reports (AR 488). Relying on Duggan's entire medical history, the DDS reviewing physician, Dr. Patrick Bianchi, opined that the severity of Duggan's impairments medically equaled the presumptively-disabling spinal impairment listed in Section 1.04A, which is the category for disabling disorders of the spine (AR 549):

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

Dr. Bianchi's opinion that Duggan's impairments medically equaled Section 1.04A was confirmed by Dr. Alicia Blando, another DDS consulting physician (AR 550). The DDS physicians estimated the date of Duggan's disability to be February 27, 2007, the day *after* the

3

1  ALJ's initial decision that Duggan was not disabled, so as to not conflict directly with the ALJ's
2  determination of non-disability.

3  Because of the seemingly inconsistent determination of disability by DDS physicians, the
4  parties stipulated to remand this Court's then-pending review of the ALJ's initial determination
5  of non-disability. This Court's remand order directed the ALJ to reconcile the DDS physicians'
6  subsequent determination of disability with his prior denial of disability benefits. On remand,
7  the appeals council affirmed the DDS physicians' determination of disability from February
8  2007 onward. The appeals council then directed the ALJ to determine whether Duggan was
9  disabled between March 2003 and February 2007 in light of the disability determination by DDS
10 physicians (AR 432, 488).

11 On remand from the appeals council, the ALJ again found that Duggan was not disabled
12 between March 2003 and February 2007 (AR 33–43, 445). Duggan again requested review from
13 the appeals council (AR 438–39). The appeals council declined review of the ALJ's decision,
14 explaining that the ALJ had complied with the appeals council's remand instructions
15 (AR 432–35). Duggan appeals to this Court.

**ANALYSIS**

17 The reviewing court will disturb the denial of benefits only if the decision "contains legal
18 error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038
19 (9th Cir. 2008). The opinion of a treating doctor can only be rejected for specific and legitimate
20 reasons that are supported by substantial evidence in the record. *Widmark v. Barnhart*, 454 F.3d
21 1063, 1066 (9th Cir. 2006).

> Disability claims are evaluated using a five-step sequential analysis. 20 C.F.R. § 404.1520. In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step

4

> four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

This Court's order granting the stipulated remand required the ALJ to reconcile his initial denial with the subsequent allowance by DDS:

> The purpose of the remand is to reconcile the subsequent allowance of benefits [by DDS] with the Administrative Law Judge's previous denial. The file pertaining to Plaintiff's subsequent application for benefits will be obtained and all the evidence will be considered in accordance with HALLEX I-5-3-17, § III.B.2.

HALLEX is the Social Security Administration's Hearings, Appeals, and Litigation Law manual, which is an internal Social Security Administration policy manual. Section III.B.2 requires the appeals council to consider whatever "new and material evidence" led to the grant of benefits on the second application (allowance by DDS) and to determine the extent to which this evidence relates to the prior period. Failure by the ALJ to reconcile a prior finding of non-disability and a later finding of disability by DDS, in violation of a Court's stipulated remand order, is erroneous. *McCarty v. Barnhart*, No. Civ. 04-5060, 2005 WL 5108536 at *7 (N.D. Cal. Oct. 14, 2005) (Patel, J.). In making its determination and explaining its reasoning in a written decision regarding reconciliation, the ALJ must resolve conflicts in the overall body of evidence, including a statement of which evidence is more persuasive and why. *See id.* at *6–8.

In this action, the ALJ inadequately reconciled the DDS physicians' subsequent determination of disability with his prior decision of non-disability. As discussed, the DDS physicians determined that Duggan was disabled under Section 1.04A, due to symptoms of spinal impairment, beginning February 27, 2007. The appeals council agreed. There was no medical reasons given for commencing benefits on this date, rather, February 27 was the earliest possible date for the grant of benefits based on the ALJ's unfavorable February 26 decision. Given this, the ALJ should have, as required by the remand order for reconciliation, determined

5

1 when Duggan became disabled and explained the reasons for his conclusion. *See id.* at *6.
2 While the ALJ acknowledged that the DDS physicians and the appeals council determined that
3 Duggan was disabled as of February 27, 2007, he did not adequately explain why Duggan was
4 non-disabled under Section 1.04A prior to February 27.

Importantly, the ALJ *did not discuss Section 1.04A at all*. Recall that the DDS physicians found that Duggan's combination of impairments medically equaled disability listing Section 1.04A (disorders of the spine) (AR 546–49). On remand, in step three, where the ALJ is required to make the same determination of whether Duggan's combination of impairments medically equaled Section 1.04A, the ALJ did not discuss Duggan's spinal impairments. This omission, and the ALJ's lack of discussion regarding the DDS physicians' clinical findings, shows that the ALJ did not adequately reconcile the DDS physicians' determination of disability pursuant to Section 1.04A.

The Commissioner argues that this Court should infer, from the ALJ discussion at step four, that he determined that Duggan's spinal impairments only worsened to the point of disability under Section 1.04A as of February 27, 2007. In his analysis at step four, the ALJ stated that "claimant's impairments worsened to a disabling level *only as of* February 2007 rather than the claimant's current allegations of disability beginning in May of 2003" (AR 448) (emphasis added). The ALJ further explained that there was a "clear indication of the progress of the claimant's impairments . . . consistent with the later progression of the claimant's impairments as indicated by the [DDS's] subsequent finding of [impairment]" (AR 448). The Commissioner's argument is unpersuasive.

*First*, it is improper for this Court to draw inferences as to why the ALJ rejected the DDS physicians' determination of disability under Section 1.04A. Our court of appeals has stated:

> Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency.

6

> If those grounds are inadequate or improper, the
> court is powerless to affirm the administrative
> action by substituting what it considers to be a more
> adequate or proper basis.").

*Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009). In this action, there are competing possibilities as to why the ALJ rejected the DDS physicians' determination of disability. Again, the Commissioner urges this Court to infer that it is because the ALJ found that Duggan's symptoms had worsened by February 2007 (as will be discussed below, this rationale is not adequately explained in the ALJ's decision). A competing inference is that the ALJ rejected the DDS physicians' clinical findings about Duggan post-February 2007; that is, the ALJ found that Duggan's impairments remained unchanged since 2003 and the DDS physicians were simply wrong to conclude that she was disabled from February 2007 onward. Indeed, this alternative rationale, plausibly read from the ALJ's decision, was actually the explanation for non-disability given by the medical expert at the administrative hearing (AR 619–23). It is unclear from the ALJ's decision whether he adopted the medical expert's opinion on this point. Having reviewed the ALJ's entire decision, this order finds that it is unclear *why* the ALJ rejected the DDS physicians' determination of disability under Section 1.04A. The ALJ should clarify on remand.

*Second*, even if this order assumes that the ALJ attempted to reconcile the DDS physicians' determination of disability by finding that Duggan's impairments had worsened progressively to the point of disability only as of February 2007 — the ALJ's broad, general conclusion of worsening impairments is not sufficiently detailed. In particular, the ALJ did not explain which *specific* impairments worsened by February 27, 2007, that allowed Duggan to qualify for disability under Section 1.04A. As discussed, the DDS physicians found that the combination of Duggan's impairments medically equaled Section 1.04A. Specifically, in making its Section 1.04A finding, the DDS physicians noted Duggan's history of (1) pain and numbness in her back, with extending pain into her legs, (2) MRI display of minimal disc desiccation at multiple levels and disc bulging at L2–3 and L4–5, (3) conservative treatment with epidural injections, (4) use of a walker and/or cane for walking, (5) bilateral carpel tunnel syndrome proven by electrodiagnostic evidence, (6) lumbosacral facet syndrome, (7) weakness

7

and absence of reflexes in lower extremities, and (8) clinical obesity. The ALJ's decision did not adequately identify which of these impairments worsened by February 2007 and which impairments were already present pre-February 2007. For example, the ALJ did not discuss whether Duggan was able to walk without assistance pre-February 2007, whether she was obese pre-February 2007, whether she had pain, weakness, and absence of reflexes in her lower extremities (she had symptoms by May 2007 and possibly March 2005(AR 181, 581)), whether her MRI results remained the same or worsened (they seemed to have remained the same (*compare* AR 582 *with* AR 547)). Although the ALJ included some discussion regarding Duggan's spinal impairments, such as noting her *minimal* degenerative disc disease and physical therapy in 2004 (the ALJ incorrectly noted that Duggan was only using over-the-counter anti-inflammatory medication), the ALJ did not adequately evaluate whether the combination of pre-February 2007 impairments would also have been medically equal to Section 1.04A. This violated the Court's remand order.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for summary judgment is **GRANTED IN PART**, and defendant's motion for summary judgment is **DENIED**. Plaintiff's request for payment of benefits without rehearing is **DENIED**. This action is **REMANDED** to the Commissioner for redetermination of plaintiff's eligibility for benefits between May 2003 and February 2007 consistent with the foregoing order. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 24, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8